That's all on behalf of the parties. On behalf of F. Gary Kovac, Ms. Nancy Richner, and faculty across the column, Michael Reiss and Helen Green on behalf of the column across the late night, and the faculty across the       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you, Mr. Borkrow. Thank you, Chancellor Shuttleworth.     Thank you very much. Thank you. Thank you, President. Thank you. In that, Ken paid himself and Sandra, contrary to an alleged oral agreement between Ken and the plaintiff, that they would be paid equally in total compensation. As evidence of an agreement, the plaintiff offered only an alleged judicial admission from Ken's discovery deposition that was taken before he was adjudicated and is incapable of testifying as an incompetent. What was his illness? Do you know? He had a cognitive, I want to say it was like water on the brain, but it was like a cognitive illness that was a rapid mental deterioration. He had been acting perhaps erratically. I think one of his employees said he had been acting erratically for a couple of years. And the way it came about that it was discovered was a couple of weeks after his deposition, he had difficulty walking and he fell. He was in his early 60s. When he fell, he broke his hip. He was in the hospital. And it was only through what was happening in terms of his medical treatment at that point that these other far more serious and ultimately, I guess, terminal issues were presented. They're separate apart from this evidence of the alleged agreement that you complain of. Wasn't there evidence presented in this case that Mr. Baird took excessive compensation, that your client took excessive compensation, that this compensation was hidden in the books, that records were destroyed, that people were told not to talk to the plaintiff? Separate apart from this alleged agreement, isn't there evidence that would support a manifest way standard of fraud, constructive fraud, based upon breach of fiduciary duty? We have here a bench trial. We don't have a jury verdict where we have a general verdict with presumptions and as far as what findings are made with respect to each counsel. We have, we accept the record as it is, that a judge heard the evidence and in a bench trial he made a statement that premised the judgment based on an agreement to share 50-50. The question you're asking about excessiveness, even when he talked about excessiveness, it was in reference to, and I want to, it's on page one of the judgment. When he's talking about count five, excuse me, page two of the judgment on count five, June 5th of 2012, he talks about when he began to disproportionately compensate himself as compared to Kovac, as compared to Kovac. Well, yeah, I mean, it's 50-50 or something different. I mean, again, you've got two partners in the business, two equal shareholders in the business, and, you know, profits are theoretically supposed to be shared equally under a subchapter S. So, I mean, again, what you read to me doesn't indicate to me, at least if the trial court was saying, I am finding my decision exclusively based upon a 50-50 breach of an implied contract, or I guess an overall contract, I should say. But he was talking about, we're talking about salary. I mean, certainly the profit distributions are supposed to be 50-50. But the judgment was based on an agreement that they would share their total compensation 50-50, not merely that the profits would be 50-50 and, oh, by the way, he paid himself something excessively. And to go to your point about what the evidence was, because we are talking about what the measure would be, Robert Klingman was the only one who gave testimony as an expert as far as the compensation. And although he assumed the existence of an oral agreement to compensate totally, and his opinion, which was the basis for the judgment that was there on count five, assumed the existence of that oral agreement. He did not have any opinion as to whether Ken was paid excessively based on anything other than what he assumed to be the oral agreement. Is there a reasonable inference, though, if someone's paid over $1.1 million a single year for working half days doing data entry, that is that a reasonable inference that maybe he's a bit overcompensated? Well, first of all, Gary was doing very well himself getting paid, I think, about $600 plus for what he did. And as far as the half days, Mr. Justice Berger, it failed to consider other things that go into compensation, such as Ken was responsible for doing all the hiring and firing for both offices. Ken was responsible in terms of product development. Ken was responsible for insurance. The idea that he was just there working half days filling out customer orders is not an accurate representation of what Ken did as president of three very profitable operating companies. How about the White family? And I have to say, in all honesty, with respect to that, as opposed to Ken, Kleeman did offer opinion testimony that she was overcompensated. And I think we have made it clear in the brief that if there was any judgment that was appropriate on Ken's side, and if it was appropriate to enter that in favor of Gary Kovacs as a plaintiff, as an individual, as opposed to the corporation, the judgment at most would be for one half of what her overcompensation would be, which is, I think in the briefs, I think we said it was about $814,000. Okay, so to answer your question, there might have been, we're not really disputing, you know, we've got these other issues, but in terms of her compensation, fair enough. But getting to that point that you kind of brought up, couldn't Kovac bring count five based upon his individual damages? No, Mr. Justice, I don't think that would be accurate or proper under the law, because he is simply suffering the injury indirectly because of a diminution in his interest in the business. But he has no separate injury above and beyond what the business sustained. And the proof of that is what their evidence was. Their evidence simply showed what Ken, treating Ken and Sandy as a unit. I'm sorry, you're treating them as a unit? Treating them as a unit, Ken and Sandy as a unit. No, treating them as a unit, the bank pulled out so much money. Okay, what injury did she sustain above and beyond what the corporation sustained? They're all a measure of damages. What the judgment was for reflects nothing more than what the corporation— More than half of what the corporation experienced because of what they had to go through to cease crime. Right. So, I mean, it's based on, and by the way, and I want to point out that even, you know, if you look at count five, paragraph 21 specifically says that what Ken was doing reached, a fiduciary duty that was owed to the companies, the operating companies. That's specifically what's in paragraph 21? So, I understand, I understand the question and there's one tweet and the judge going back to 2009 had denied the motion to dismiss when we met because he raised the issue. And then the operating companies had their own claim, which then wanted to be dismissed because one thing we should all agree on is that we can't get a vote from Mr. Kobe and from the operating companies. It has to belong to one or the other. They're really mutually exclusive. But going back to the only evidence of an agreement that the trial judge could point to was certain statements made in a discovery deposition taken shortly before his illness. You can finish your point. Yes, that the question was, you know, in response to the question, isn't that because you guys agreed that you would be paid the same amount of money in salary? And Ken says apparently yes. But if you look at that in context, Plaintiff was using a deposition exhibit that referred to the 401k plan for one of the operating companies. And it shows on the page that yes, they were each paid up to the max $205,000 of highly compensated employees so that there's a max out on the 401k. And then Ken explained through further questioning that it was the most he could get off the retirement. If you just read it in context, after he showed the exhibit, Kenneth simply stated that his compensation was equalized to maximize up to the 401k ceiling. But counsel, when you're a trial court judge and you're hearing evidence, you're not hearing one little specific statement and disregarding everything else. You're hearing everything in context, if you will. You're hearing the whole entire story. For instance, you're hearing that your client walked the plaintiff out, told all of those working at the place not to speak to him. All of those facts came in and all of those facts taken as a whole, couldn't those certainly lead the judge to reasonable inference that your client had breached some fiduciary duty to his partner? You're asking a question that goes to a different issue, respectively. You're talking about, okay, was there a basis for the court to find a breach of fiduciary duty? And I think we already said that if you make certain assumptions about who gets the cause of action and what was proven, I think we've said that as far as seeing this compensation and with respect to Ken's compensation. I understand. I just want to make sure that we understand the context when we say this, okay? With regard to this testimony, though, okay, we didn't get counsel wasn't reading everything, okay, from that deposition to show when Ken says, for example, he's asked, and this was put, because you want to talk about context. Question, you always made the same salary, didn't you? Answer according to this. Well, what's this? Which would be that exhibit that simply was relating to the 120? It wasn't a related question. It said for as long as you guys have been partners, for the longest time, you always pulled the same salary out, didn't you? The answer was yes. And there was a bonus at the end of the year. You paid yourselves an equal bonus, didn't you? The answer is yes. And then the question until when he says, well, I don't recall. Right. And there are cases that clearly hold that when a statement is made in reference to an appearance or, you know, an inability to recall, it's not considered an unqualified judicial admission. And I do agree. I do agree. If you just look at one statement, okay, you don't read what happened, what was asked before it or after it, okay. But that's why you have to have the context. And that's the burden of the defendant's counsel at trial to point that out and to set that up. And the way this issue was presented was we had motions of money before trial. This all was decided in motions of money before trial. So the trial judge did have everything, okay. And then he made the determination, which we think is subject to no overview, that it qualifies as a judicial admission. So whatever we said before or after is still a judicial admission, and that is where we think that there was error. Would the destruction of records in violation of an injunctive order have any application or connection to IPI Instruction 101 that relates to negative inferences that can be drawn when evidence in the controlled one party is not presented? I think you're talking about 501. I thought it was 101. I thought it was a general one, 501, and it's a missing witness, missing records. I don't understand that. I don't understand that you are in control of. Right. Well, first of all, there was never any suggestion. There was never any claim made by the plaintiff that they couldn't prove their case with regard to an agreement because of the destruction of records. There was nothing. They had the corporate minutes, the minutes of the meetings, the board resolutions. They had. There was no issue about that, okay, as far as people went to an inference. If there was an admission, why would they have to raise the argument? But in addition there, too, I don't understand. You like to pile on and destroy your opponent, not just merely win. But I guess what I would say to that is that the judgment was based on an agreement. And, yes, there may have been a basis for the judge to determine that there was a breach of a duty, but then you still have to come to the issue of damages. And, again, this also involves the cause of action. But the fact remains that the only evidence of an agreement they have is precisely what Justice Burke read. That was it. There was nothing else in the agreement. Did the plaintiff ever claim that there was a 50-50 split? Well, there was a split. Pardon? There was. Gary Corbett claimed there was a 50-50 split. No, no, no. I said didn't the plaintiff ever testify to that? He couldn't. Well, he couldn't testify to it. Why couldn't he? Because of the dead man's act or something like that? Yes. Yes. So he was foreclosed. And Sandra, well, I mean, Sandra could testify, but, you know, the judge had his own determination he made about her. So it came down to just what Justice Burke read into the record. That's what the $3.2 million was based on, this admission. At least that's what the judgment is based on. Now, if you have a 501 instruction, that's a jury trial. You have a verdict. And if you had a jury, I think I should be making some other arguments. But when you have a bench trial, the judge says, flat on the record, there was this 50-50 agreement, and the excessiveness is all relative to what Gary was making. You'll never fall on whether or not the agreement to share 50-50 was actually proven. One more thing, and I know I've thought about this, but I just wanted to remind the Court, because I'd like to reserve something about it. With regard to the punitive damages, there was a claim for punitive damages, and the judge did award $450,000 against the estate. And our position is, based on this Court's decision in Vincent and based on the majority rule outside Illinois, that punitive damages abate upon death of the court case. I know I've advanced everything in the brief, but that's what our argument is for. That's for the questions that are on the minds of the panel. We welcome the questions this morning. To sum up, we ask you to vacate the judgments on Cells 1, 2, and 5, and to vacate the award of punitive damages. Thank you. Thank you, Counselor. We will look back for a rebuttal. On behalf of the Mystery Program, Ms. Osher. Good morning, Your Honor. Good morning, Court. How was that, Mr. Copeland? Before we go on, can you address his argument about punitive with respect to the Vincent case? With respect to what case? Vincent. And here's the problem with the Vincent case. It abates at the plaintiff's. We have a dead defendant. So I think I want all of you to understand, that says, when a plaintiff dies, they abate. This indicates that the victim, in my case a plaintiff who's very much alive, is supposed to receive the actual punitive damages. Besides just the terms and punishment, you have other Illinois public policy issues, such as the expression of society's outrage at such conduct. And also, the victim's interest. One of the reasons, or one of the public policies that get promoted by holding this not abated, would be because there's an economic cost to litigation. Well, who are you punishing? The punishment factor, you said, is not there. However, I would submit, the heirs have no right to that money. They should not reap the reward of their husband's or their father's misconduct, the egregious breach of fiduciary duty. It makes much more sense to give it to the victim than it does to let the heirs have it. For example, if he had not died, his estate would have been decreased by the amount of punitive damages. And that's one of the things the trial court actually considers. Why should their amount in the estate increase simply because he died? And that's one of the things that other jurisdictions, which I cited in my brief, have held. Is there a strong and clearly articulated public policy, akin to drunk driving in Penn-Berkeley theater, where there is a strong and clearly articulated public policy that people shouldn't steal from their partners? Well, yeah, I think it's against Illinois public policy not to steal from your partner. You know, this judge, though, he was a very thoughtful judge. And I wasn't there, but I think it comes up on the pages. He said, look, you have to curtail this kind of conduct. And he did weigh his discretion. I don't think he unmaskly put in punitive damages. Well, he did on two elements. I mean, he did on the conduct toward your client and the operating companies, but he also did on the conduct toward the court. Did he weigh that into it? I think he did sort of talk about, look, this is a man who is not going to be deterred for anything, including court orders. I think that the court can properly consider that kind of contumacious or intentional, flagrant disregard for other people's rights, including the court's and my client's. Is that the reason for punitive so long? Is there anything in there? I mean, certainly the court could have done it in contempt. Well, he actually did, but they didn't get around to imposing damages. I think there is an order saying he had violated the order saying don't destroy documents, give access to Mr. Kovach, and instead he did things like change the locks. But, yes, the public policy considerations for punitive damages would include deterrence, which is one of two, punishment and deterrence. And you're right, he's dead. We can't punish this man. The second thing is, though, do we really want to reward the estate by increasing the amount? Because if he had lived, his net worth would have been decreased. That's not one of the things with punitive. I mean, there are three factors that I saw in the cases in punitive. There's the punishment of the person who did it, deterrence of the person who did it, and deterrence of others. Now, if you're talking about deterrence of others, that's one thing, and that's what Pemberley talked about and Eliza. Right. But I didn't see anything in any of the case laws saying who ought to get the money. I mean, that doesn't really – does that come up in the cases that we're going to weigh, we got $400,000 here, who should get it? Other jurisdictions say it. Now, I found Illinois cases that say it considers both society's interest and the victim's interest. And there are other cases that say it makes no sense. You want to give it to the victim so that they have an incentive to deter similar acts by bringing a suit, because compensatory damages aren't necessarily all that much. And so what you want to do is promote a policy where people have an incentive to sue to stop this kind of stuff. That's one of the factors is to consider whether or not the compensatory damages would be so small that damages are appropriate. That's one of the factors to consider. Right. But here that's not the case, and we'll talk about, what is it, $3.2 million or something, right, that compensatory is worth more than a pittance in this case. Right. Are costs still considered part of the factor of damages or not? As a general rule, yes, they are considered. The cost of litigation and if this court were to reverse and amend, which I submit it should not, attorneys fees are also generally considered. In this case, the judge said, well, I'm not going to apply, I'm not going to give punitive damages in violation of the American rule. But he did say, given this egregious conduct, that this man who could not be stopped. You said give punitive damages in violation of the American rule. What do you mean, attorneys fees? He actually used the word American rule where each litigant pays for their own. Well, is it a misnomer by him or by you? Because the American rule relates to everybody pays their own fees. Right. And this rule is the winner against the third attorney's fee. Right, right. It's called a misnomer because you can consider the cost of litigation and the word American rule, as far as I've seen, is not used with regard to punitive damages. But he said punitive damages don't overrule the American rule. And the case law says, oh, yeah, you can consider the cost of writing litigation, which would bring in the cost and the fee. Was there a specific request for fees? Yes. And that was denied? Yes. And that would be consistent with what he just said a few years later? Yes. But he awarded $450,000 in punitive damages. We had over a million. And those costs just keep increasing because we still have not been able to get satisfactory judgment. I'd like to just clarify and address a couple of the defendants' points. This is a little unusual because the facts really aren't contested. They act as if there's nothing wrong with what they did here. But if their actions were so above board, why were there these elaborate steps to hide it? They sum up compensation through tests. He ordered employees not to talk to Mr. Kovac. Why was there an order to the engineer not to tell Mr. Kovac about the actual production costs? And why destroy years of business records? The defendant said today there was no issue about whether we could prove our case. In fact, I believe Mr. Kleeman said that he only could go back eight years because he didn't have the records. So everything else I was getting, what excuse did he have for stealing the business? And it wasn't even the repair business because the operating company employees were still doing the repairs. He stole the money from the operating company. The argument that I heard, or the main argument I heard, is that this decision from the trial court was based solely on this 50-50 agreement. Do you agree with that? I do not. On page three of the court's decision, he said pretty clearly, this is a 50-50 appendix. He said, okay, I said page three, hold on, while I get there. This is page two, I'm sorry. Mr. Barron clearly breached the fiduciary duty he owed his partner, Gary Kovac, when he grossly overcompensated his own wife, and when he began to disproportionately compensate himself as compared to Kovac. This is page 51 of the defendant's brief. I don't think you need to have an agreement for a breach of fiduciary duty. Mr. Barron was an officer and a director, and he owed a fiduciary duty to Mr. Kovac. I think that's true, but there's a lot of evidence that there's equal pay, including Mr. Kovac testified there was an agreement, and he thought it was being honored. That's pages 194 and 198 of the testimony. The other proof is the inference that's raised by Mr. Barron and Sandra's elaborate scheme to make sure that Mr. Kovac doesn't find out. In the Tully case, they say, look, if you're taking all these steps to hide your actions, this shows there's something to hide. And in this case, he was hiding from Mr. Kovac that he was being cheated to the tune of millions. Barron, in his brief, said, well, Mr. Kovac couldn't testify if compensation was reasonable because he didn't watch Barron work. But the question about whether he was reasonably compensated followed the deposition testimony about what his job duties were. He did billing and payables, which, by the way, were Sandra's jobs, I thought. Sometimes he collected receivables, and he usually handled personnel. But his primary job was order entry, or he typed orders into the computer like a data processing clerk. I would like to emphasize today that it was the defendant's burden to prove that there was reasonable compensation because he was self-dealing. That's the Romanette case. So he had the burden to show that this excessive amount over and beyond what Mr. Kovac had was reasonable. He worked half a day. He mostly did typing, and he got over a million dollars one year. Your Honors, I want that job. It wasn't reasonable. Did you plead a derivative action in Count 5? I believe we brought a direct action. I thought there was an alternative argument of yours that it was a direct action, but also if you read that it contained the elements of the derivative action. Your Honor, I have to review the complaint, and I'm happy to do that and provide input afterwards if you would like. But the derivative action issue is interesting because the defendant first said Mr. Kovac couldn't bring the claims. He lost it. Then he said, oh, the operating claims were duplicative once the operating company got his own attorney, and they brought cross-claims, and the defendant said, no, no, you can't bring that either. He succeeded in getting the operating company's claims dismissed. Now he wants to vacate the judgment in favor of the plaintiff arguing it belongs to the operating company, but he's also arguing the operating company can't recover because those claims were dismissed. So he wants it always. The defendant's attorney says in his reply brief, this isn't a shocking, but I submit it's exactly what he's doing. A derivative claim, to get to the merits, Your Honor, is a claim brought by a shareholder for a harm sustained by the corporation when it cannot or will not bring the claim. But where a defendant has breached a duty, as Barron did here, and the plaintiff has sustained a separate and distinct injury, then he can bring a direct claim. Here, in the class of shareholders, and there are two, they weren't treated equally. Mr. Kovacs sustained a $3.22 million distinct and separate injury, and that's why he has the right to sue and get that money directly. Is there anywhere other than the oral agreement that says they should be paid 50-50? Yes. Section 8.05 of the Illinois Business Corporation Act says that a board of directors has the authority to set reasonable compensation unless the bylaws or there's some sort of a resolution. Again, it's Barron's burden to show he was reasonably compensated because he was self-dealing. And he never showed anything demonstrating that he had the unilateral authority as the president to pay himself millions over and beyond what his co-owner, his 50% co-owner, received. You don't even have to get to the Judicial Commission. I don't see a specific and identifiable amount in this complaint. There are no 615 motions granted on that count. Your Honor, the standard of review is de novo. And is there any set of facts to show that he would be entitled to recovery? And that's a pretty good standard to me. So when they say, from this time you've been doing part-time bookkeeping and you were paid a million, over a million dollars over these years, and that was beyond reasonableness. It was not reasonable. It far exceeds the reasonable amount. And we also said these were all part of his scheme to misappropriate profits. So did the conversion count. The conversion count said, you know what? Here's the money it took. You get a reasonable amount. By the way, this should have been divided 50-50 with the other shareholder. And that gets to a conspiracy count, you're talking about? Well, it's also in the conspiracy count. Okay, the conspiracy count, you're alleging specifically that she did things, at least in count nine, in the direction of Mr. Barron. And some case law was presented that that would create an agency situation, and you can't have a conspiracy between an agency and a principal. Well, Your Honor, she was an employee of the operating company. Her duties and loyalty should have been to her principal, the employer, not to her husband, who was stealing money. If you were to say that a co-conspirator can escape liability because she was following orders of another conspirator, then you'd never have a civil conspiracy claim that was proven. It's almost like saying she had a right to commit this theft because her husband told her to do it. You can't say that. You know, the sexual allegations to support that conspiracy are in the complaint. She knew that Barron and Kovach had drunk 50%. She admitted in her deposition, admittedly, that historically she was aware that they were paid equal amounts. She knew that it's fact because she was the bookkeeper. She knew she was transferring money to Kess and writing and causing enormous checks to be issued to her for her six or eight hours a week, another job I want. And then she had these check being issued. So she transfers the funds, and it's all hidden from Mr. Kovach. She failed to pay him, and she would have been paying the rent, this 50% of the rent. She knew about the payments that were being stolen for the repairs that were being done by the company employees. And on top of it all, she retains the benefits of this scheme. You know, the purpose of a conspiracy is to say it extends liability to that beyond the act of wrongdoing. But in this case, she was critical. She knowingly participated in this systemic misappropriation of Mr. Kovach's share and the operating company's funds, and she just can't claim innocence. Okay. Any other questions? No, thank you, counsel. Thank you. I believe we will have time for rebuttal on the proceedings. Thank you. Ms. Capone, you may proceed. Thank you, Your Honor. Okay, please allow me to counsel. I represent the three operating companies that were called back throughout this litigation, and our cross-appeal and our response to their appeal kind of don't tail together. With regard to Mr. Barron's estate's appeal, they bring this argument that the judgments on count five and count two should be vacated because the operating companies had no claims pending. They really say that with respect to count two because Judge Mueller gave the judgment on that to the operating companies. The problem with that argument is that he plead over that. He brought a motion to dismiss based on that, and that was plead over. But not only that, but he invited error by moving to dismiss our cross-claims. So on the one hand, as Ms. Lisher had said, on one hand they claimed that Kovach could not bring the claim on behalf of the operating companies, but then on the other hand, when the operating companies brought it themselves, he said, well, you can't do that either because Kovach brought it. Well, one of those has got to be wrong, but counsel was suggesting that there shouldn't be any judgment at all. And all that is despite that he doesn't dispute at all the evidence that he took the business of the repair operations away from the operating companies and used their employees and their facilities but nevertheless took the money for it. Who's the business agent for your clients? The business agent, Your Honor? Mr. Barrett, is it Mr. Kovach? Who is the person that you call on the phone and said we win or we lose? You represent the corporation? I represent the corporation. Are you the president of the corporation? I'm not the president of the corporation. Who is the president of the corporation? At present, the president of the corporation is Mr. Kovach. Okay. I mean, you indicated that counsel was saying that they kind of wanted both ways, that all these counts ought to be dismissed at different times. But I don't really see that. In page 32 of the yellow brief, where Mr. Reese's indicates that, you know, the parties should be realigned at least as if a count two was conserved. I noticed that as well. When he did his white brief, he puts in that the count two should be vacated, the judgment on count two, and then we brought our response in, our cross appeal, and then apparently Barrett was now conceding that... Someone ought to get the money on count two. Pardon me? Someone ought to get the money on count two. Someone ought to get the money on count two, and then someone ought to be the operating companies. So with that respect, I don't think we really have an issue with that anymore. I mean, that all came out in his reply brief. But he was just pointing those two items out and so forth. Procedurally, what do we do? Do we just... Do we have the ability to realign the parties at this point in time, or do we have to vacate the dismissal of count three and give your cross claim and send it back for an actual judgment on count three, your cross claim, and reverse count two of the main claim? I suppose you could do that, but in the end, Judge Mueller entered judgment on behalf of the operating companies for count two. Well, they didn't have anything pending at the time, though. Well, the only reason we didn't have anything pending is because the charge for erroneous dismissal... That's what I'm asking you. Right. My view is we can just leave the judgment as it is, and it would be the same thing as we did yesterday, which is have a judgment in our favor for the repair services money. So I don't think the court needs to really do anything unless it somehow agrees with Barron's claim that the operating companies... And Kovacs couldn't bring the claim that the operating companies should have. I don't think it's even necessary. I think we just affirm the judgment as it is, and that makes part of our cross-appeal move. I mean, if we affirm the underlying judgment, your cross-appeal is clearly moved as to counts one and two of your cross-appeal. Well, as to count two. Count one was a little different. That's gross mismanagement on a more general basis. But, yeah, it would be moved as to actually count three, which is the repair services items. If we affirm the whole thing as it stands right now, then you're saying it's moved as to two and three of your cross-appeal? Yes, I would agree with that. But then you want us to reverse the dismissal while it's an effective trial. Well, that's what we had argued, because we did bring the gross mismanagement. In the end, there wasn't a lot of evidence on general gross mismanagement. It was simply on the excessive compensation and the repair services. I mean, we could decide what to do with regard to that down the line. But the trial counsel for the operating companies brought a gross mismanagement claim, and we submit that that should have been upheld because it is a separate and independent claim from whatever FOBAC was bringing. And that actually brings us to a couple other issues. I'm going to switch gears a bit with the cross-appeal that the trial court's decision to dismiss our cross-claim was based on the A3 of Section 2-619, but none of the factors that apply in those kinds of cases really apply here. And that's because all the cases are brought in the same case. This isn't one where one was brought in Kane County and the other was brought in DuPage County. They're all part of the same case. And so for that reason alone, the trial court abuses discretion in dismissing our cross-claim. There's no duplicity or duplicates its litigation, and there's no comedy or any of those other factors that I cited in my brief that apply here. And so we submit that the trial court did err in dismissing that claim and preventing us from asserting those. And then our other portion of our cross-appeal is, it may seem like a minor point, but I find it fairly significant. When on the motion to reconsider before Judge Mueller that was decided in September, Judge Mueller, the trial court, found that Count 1 also is one that should have been entered in favor of Mr. FOBAC. Count 1 was a 12.56 action under the Business Corporations Act. However, Judge Mueller decided that the damages for Count 1 are the same as the damages brought in Count 5. And so therefore, it should be that in order to avoid a double recovery, which nobody on our side is suggesting, that Count 1 should say that there aren't any other damages on that. But then the order itself doesn't say that. The order itself says no damages, period. And in looking at that in the period I briefed, I thought, well, that's not quite right. What it should be is no additional damages. Because there were damages on Count 1. They just happened to be the same damages as on Count 5. If the order just doesn't look like that, it looks like Count 1, he didn't have any damages for Count 1, which is clearly not the case. And so I believe that the actual order should comply, should be consistent with what the record stated. And we certainly have standing to appeal that. Mr. Barron's escape asserted we don't, but we have necessary parties to the Fallout 56 actions, so we could certainly bring that argument. And because it was done on a trial court basis, we didn't have to bring that to the attention of the trial court first. And finally, we haven't had a lot of discussion, but it was raised in the briefs, the distribution of the damages. Mr. Barron's escape argues that the trial court shouldn't have awarded the excessive compensation to Mr. Kobach. This is a case in equity, and the trial court has the discretion, based on the facts before it, to do whatever remedies it finds appropriate. And we submit that the excessive compensation that Kobach was, that the trial court awarded to Mr. Kobach was reasonable. The proceeds, there's no evidence that the proceeds were needed by the outbreak companies. There's no evidence that they would not have been distributed to the parties anyway if they had been distributed correctly. And so the trial court was, there's plenty of evidence in the record supporting the trial court's decision to give the excessive compensation damages to Mr. Kobach and the repair services to the operating companies. That's really about everything. They have most of the issues, but that's what we have on our file. I reserve any additional time for my further reply. You will have time for rebuttal when you cross the field. Thank you. Mr. Reese's rebuttal argument. Actually, I believe five minutes of rebuttal, correct? It's a good thing that I began this argument by standing down my grief with regard to what I didn't get to, because I didn't get to a lot. But let me just go. Well, there are numerous issues in this case, and we don't have, we could probably argue this case all day if you wanted to. Where were the types of limitations? Let's go back to punitive damages, which I guess was about 35 minutes ago. No one is claiming a statutory basis for punitive damages. So the only way they could get punitive damages under our law would be if there were strong, equitable considerations. And in this instance, this court said that those, that section to the general rule will only apply, and this is Vincent, when it is clear otherwise that the party would be left without a remedy. And they were actually referring to yet another case called Marston from the First District. So can anyone stand here today and say with a straight face that they didn't have a remedy, that they didn't recover substantial judgment? They recovered a judgment worth about $3.2 million on one count. All right. So based on the law as it is today, they have a remedy. They don't need the punitive damages. The punitive damages can't be premised on other things that they're talking about. They're talking about Sandy, you know, Ken's wife. They're talking about Rebecca, the daughter. They're talking about how they shouldn't be allowed to profit. That's one of the things they're talking about. The other, they named several things that they're talking about, including what punitive damages apply to, to punish the defendant for what he did so fragrantly to deter him from continuing and deter others from doing the same thing. She then brought in, well, the family shouldn't get the money. Okay. So why shouldn't punitive damages be applied? Well, I think the court answered that question before in Vincent because they're talking about what you're referring to are these type of equitable considerations. Correct. All right. The deterrence, the expression of the conscience of the community. But in Vincent the court is saying, and in Marcia the court is saying, that we're only going to try to consider that in the case where otherwise you don't have a remedy. And here, of course, there is, in fact, a remedy. And a case where you have another remedy, you would never see punitive damages. I'm saying that based on what Vincent held. All right. Now, Pennbrook is the only case in the Fifth District, Pennbrook is the only case that has recognized punitive damages. Vincent didn't agree with Pennbrook at all. And I think Judge Mueller, you're not bound by Pennbrook, but Judge Mueller, I think, was bound by Vincent. So with regard to punitive damages. He was bound by Vincent or Pennbrook? Vincent. I mean, couldn't you make the argument that Vincent is a plaintiff who died and Pennbrook is a defendant who died? Right. But the cases don't distinguish between plaintiffs and defendants. When they're talking about punitive damages of fate, okay, it's the same rule on either side of the beach is what I think is the rule. Going back, because I know I don't have much time, going back to this question about equal compensation or reasonable compensation and complementing the statement that, oh, we don't have to rely on the agreement. We've got Section 8.05 of the IDCA that talks about compensation. And I think that was in response to the question that Justice Shostak asked. Well, what 8.05 talks about is the authority of the board to set reasonable compensation. There's nothing that mandates by statute equal compensation. If there was such a statute, it's never been cited, and if there was such a statute, they wouldn't have tried to make such a big deal about pulling out an alleged omission from the deposition. Why is it, counsel, that they were going along all these years of allegedly or supposedly being equally compensated, and then all of a sudden it changed? Well, I'm sorry. I don't agree necessarily that they were being compensated equally through all of the years. The only years we're really talking about where they claim that that issue would be, I think, between 1999 and 2007. You didn't claim for much that they were going along all these years, both being equally compensated and then— I think that was the plaintiff's claim, but I don't think that— We were in a position, obviously we were in a position, look, and this goes back to the cumulative damage issue as well, Ken Berry wasn't around to explain his actions at the time of the trial. On our side of the case, we couldn't put in evidence as far as what happened and what changed. Could it have been his illness? Could it have changed a lot of the stuff? It could have been. It could have been. It could have been. But they still have a case to prove if they're going to base it on total—on equal compensation. One last thing. Then I'll flip that, and then Ellen will get up. You know, you read—look, you read the judgment order, and it's very clear. The first sentence un-califies the judge that he is going to impose a constructive request to ensure the distribution of profits established between the parties on the agreed-upon and statutorily mandated 50-50 basis. That's what it was based on. Well, there is no statute that says 50-50, and so you're left with—there has to be an agreement. But all we're saying is they didn't have that here. For all the reasons I've put in the brief and on all of the issues, we are asking you to vacate these judgments and the award of punitive damages, and Ellen will present the argument on a constructive basis. We thank you for your time this morning. Thank you. Thank you. Good afternoon. You may have a brief for Senator Barron. May I please have the floor? I'm just going to touch on the issues across the field. There were two across the field, plaintiffs, cross-appeal related to three conversion claims and two conspiracy claims. Of the three conversion claims, one I think this Court need not address. It was Count 7 against Ken that related to conversion of rental payments with respect to the Swenson Avenue property, which was the subject of Count 6 breach of contract claim for which he was awarded $45,000. We are not appealing that portion of the judgment, so it would involve the same parties and the same facts, just a different theory of recovery. So we don't believe that needs to be addressed. Counts 4 and 8, Count 4 was against Ken for amounts that he and Sandra were paid in excess of the 50%. Count 8 was against Sandra with respect to her excessive compensation for bookkeeping services as alleged. What was important here is that these are conversion claims, and it's not just that they owe money. And what came up in the plaintiff's argument is that there is a specific amount, and it's not enough that it has to be an identifiable amount. As set forth in the pleading, there's amounts for every year that the claim is owed. It has to come from a specific and identifiable fund that the plaintiff has a right of immediate possession to. So normally it's property, but it can be money, but only if the plaintiff has an immediate right to those funds. And even, this is kind of telling from their brief, the plaintiff says, well, he had an immediate right to 50% of the operating company's profits at the point that the profits were ascertainable. Well, if he had to wait to the point that they were ascertainable, well, then he didn't have an immediate right to those monies at all times. He can't just come in and grab 50% out of the general operating fund. All of these funds from the religious accountants. And that's how you distinguish bill of merit? Because at that point in time, as soon as the money was paid, the person was entitled to the percentage of bill of merit? Yes, so in some cases it comes from a three-party source like sales commission. You know it's an identifiable fund. Here it just came from, as alleged, the operating revenues of the operating companies. We don't know where that money came from, from different customers. It's all mixed up into the operating funds. And he's claiming, well, I should get a percent of that, but not until it's declared to be a profit. So he could not have an immediate right to those funds at all times. And that's, it's not alleged in the complaint as well. So those conversion accounts must fail. Under their theory, any time somebody owed money, you say, well, you owe me $100, you're converting the funds. But, you know, it may just be from here. Especially with respect to Sandra's compensation. Well, she was paid through KES, but from the operating funds, general operating revenues. You can't claim that COVAX could just, had a right to those monies at any time. Isn't it the fashion in which they were taking the money that would justify alleging conversion? Based upon the totality of the circumstances, if you will. I think that's a, maybe not a precise legal use of the word convert. You might say, well, you're converting my property, you're taking my money. You know, you've converted it. Maybe that might mean misappropriated, a steal, or something like that. But if you want to state a claim for a conversion, you know, historically it's a piece of property or you took my farm equipment. And it has evolved to include money, but it might be a fund that was set aside. In one case, it was an escrow for a house that, they said there was not conversion because two people had the right to that money, not just one person. So you're submitting they're using the term conversion in fraud? It just could catch you through that, Chairman. Yeah, you converted my money. You know, you, I don't think that's the precise use. You took what was yours. Correct. And I, for those reasons, those tests were properly dismissed. There's also two conspiracy counts. Count 9, both of them were directed against both Ken and Sandra. Count 9 was for funds that were taken from the operating fund, operating companies, operating funds, transferred to KES, and then characterized as contract labor. Count 10 is with respect to the share of the rental income, again, once in property where they're seeking approximately $45,000. But in each of these counts, plaintiffs specifically allege that Sandra was responsible for issuing checks, initiating transfers of funds from the operating companies, and issuing checks for the payment of rent, and that she was operating as a bookkeeper. And in Count 9, in both counts, plaintiffs specifically allege that this was at the direction of Ken Barron, who was also alleged to be the president of the operating companies. In, also in Count 9, they allege that this was in furtherance of Ken Barron's scheme to convert funds rightfully belonging to the plaintiff. So, plaintiffs have alleged both that Sandra was writing checks and transferring funds as part of her responsibilities as a bookkeeper, and that she did these at the direction of Ken Barron, who was the president of the operating companies. And even with respect to Count 9, they specifically allege that this was Ken's scheme. And under the case law that we cite in our brief, an agent's actions are considered the actions of the principal. So, Ken was responsible for whatever she was doing at his direction. And the case also holds that an agent cannot conspire with a principal to carry out the principal's scheme. So, for that reason, those counts were properly dismissed. Also, plaintiff brings up in the brief, as well as in oral argument, some other testimony that came up at Sandra's deposition or things that occurred after the complaint was, or these counts of the complaint were dismissed. At no time did they seek to amend the complaint to allege that that either were discovered or occurred after the dismissal of those counts. And so, they should not be considered. And the trial court did not have those two considered when he dismissed those claims of prejudice. Who got Count 1, the operating company's cross-claim? Just Count 1? Count 1 indicates that that should... You know, we can realign the parties and do whatever on Count 3. Count 2, I believe the damages were taken care of already if we were referred on everything else. But I think the argument is that Count 1 can proceed separately. Well, our arguments with respect to the operating company's cross-claims apply equally with respect to all the cross-claims. They were dismissed pursuant to Section 216, 619A3, which allows dismissal if there's another action pending between the same parties for the same cause. And the operating companies agree that this is subject to an abuse of discretion standard. We have no transcript of the hearing on the motion to dismiss in which the judge considered this argument. For that reason, this court should presume that the trial judge did not abuse his discretion in applying the relevant factors. They've had a couple of cases where they didn't need a transcript and one was purely a question of laws. Here, you're applying different factors. Or the appellate court had everything before it that the trial court had. Here, we don't know what the judge heard or what the parties argued or any statements the court had made on the record. There's different factors to consider that are outlined in the case law. The court's not required to consider every one. It's clear that once the trial court decided that these claims belonged to COVAC, that Ken Berry would have faced duplicative claims from two different parties. So it's not inconsistent for us to say, well, we believe these belong to the operating companies, but once the decision has been made, well, we shouldn't have to defend against two parties making the same claim for the same injury. And without that transcript, we don't believe this court could find that the trial judge abused his discretion and should affirm the dismissal on those grounds. They request all kinds of additional relief that was not alleged in the cross-claims, such as, they're sort of thrown out in the breeze because they're not in the pleadings, but punitive damages, return of compensation that was paid to Ken Berry, relief under count one, which is brought under the Illinois Business Corporation Act, when all they had is three common law claims. And then they even complained in their reply brief that, I'll just wrap this up, that if this court, that's our argument, that aside from their cross-claims, they'd be left without a remedy. Well, that's correct, because if you have a claim and you want a remedy, if you want to recover something, you should have a claim. So the proper way to recover is through those cross-claims. They fail to preserve those properly, but in having done so, for those reasons, it should be affirmed. And we should not be required to agree that if judgment properly goes to the operating, should have been brought, the claim should have been brought by the operating company. That doesn't mean that judgment should be entered in their favor. Thank you. Thank you. Mr. Blisher, what were you going to run across appeal? Just to get back to one of your questions about the conversion claim, in page 827 of the white brief, paragraph 179, we allege plaintiff's 50 percent share of the excessive compensation paid to Sandra for the year 2003-07 totaled a specific amount, and in the next paragraph we say this is as far as we know, but we think there's more. So I do think there's an allegation as to a specific amount, and in Bill Merrick, of course, the court said a percentage suffices. I don't think, and this is, well, first of all, I'd just like to explain why there's a cross appeal. There's a cross appeal because we don't have satisfaction of any judgment. They didn't appeal the $45,000. Nothing's been paid, and under state check, we want to be able to get a remedy for our client. It's notable that in October of 08, he had in his petition being adjudicated as disabled 6.72 million, and it kind of disappeared. So we actually, and Sandra took control of everything as of October 08, so that's why we're pursuing this cross appeal. The only other point, two other points I'd like to make. When they argue, well, you can't just assume that some of the money is in the fund, it was in the general operating funds, therefore, you didn't have a right to it, but that would mean if a wrongdoer converts money and co-makes it really fast in the bank, that there'd be no remedy, and obviously, that's not the law. If it was a specific identifiable sum that was mine, and you took it, and then you can do whatever you want with it, but if you can identify it from the time where it's mine, and then you take it, I think the argument is that you can't, that you haven't done it here because it was a specific identifiable sum that was your client's, couldn't be determined until after some calculations are done as to profits and this and that. That's the argument, not that it was mixed together after the fact. Oh, I misunderstood you, Dave. Maybe I misunderstood you too, but I misunderstood you. It's been a long day. But I think it's still merit that says, look, you don't get away from this conversion theory just because you've taken the money and it's hard to trace it. If it's money, you can follow it. Finally, the money that was alleged in the guardianship petition was $6.2 million. $6.7 million, yes. Was that alleged to have been money from the businesses or his personal? I believe it was his personal because it was an adjudication of his disability, so those were his personal assets. We'll be providing to the court a petition for when they open the fee. It's less than $100,000 now, and we haven't got satisfaction of the judgment. We'd like to see this get paid and resolved and over with. It's been a long time. You first would like it to be affirmed. Affirmed, yes. Affirmed judgment. Is there no further questions? Thank you, Your Honor. For these reasons and the reasons of my brief, I ask the court to affirm. Thank you. And reverse on the cross-examination. Thank you. Mr. Piscopo? Your Honor, I'll be brief with regards to the cross-claim. You had asked about count one. Count one of our cross-claims is a little bit different from the other two. And I do believe that if you, as I said before, that if you affirm the judgment in all other respects that Mr. Kovatch obtained, then counts two and three would merge into the judgment and my cross-appeal wouldn't be necessary. But if it's reversed on the grounds that the operating company should have brought it, then we definitely ought to have those counts reinstated. Just so I'm clear, though, are you arguing, though, if we affirm everything that happened up to this point, are you still asking for us to reverse the dismissal of count one of the cross-claim? I think your question kind of goes to are we really going to go back to court? I don't care what you do after this. I care what we do and what we're responsible for. I believe down to the law that the count one ought to be reversed also, simply because we should not have been dismissed based on section 2-68. So it wasn't the same cause of action with the same parties? While I was sitting there, I looked at it, again, just to make sure what we were alleging. It alleges the broken management for shorting its employees on some sales commissions and things like that. They're not the same cause because those are damages that the operating company sustains on their own without Mr. Kovach. Are you fouled on that? Pardon me? Are you fouled on that? I mean, you didn't present a transcript. We don't know what the trial court ruled. We don't know what was presented to the trial court. There's a presumption that the trial court had a basis in law, in fact, if we don't have a transcript to make the ruling. Well, I respectfully disagree on some aspects of that. If there are facts in dispute, then yes, then you wouldn't need to have a transcript that would show what evidence was presented to the court. But there was no factual dispute here. Their basis for dismissing it is that Kovach and the operating company are one and the same. The operative facts are that Kovach is an individual shareholder. He also happened to be, by court appointment, the president of the company at the time. Well, he's still no longer with you. Well, no one would be usually told that there's an abuse of discretion in that case. If they were one and the same, why would a fighter do it? Well, that's right. They're claiming they're different. They are different because the operating company is a separate entity from the individual. The individual is a shareholder. The operating company is an entity. Well, the individual is a shareholder and an employee, is he not? He is the president. That still doesn't make him the president. He wasn't the president when these torts went down. He was not the president when the torts went down. Mr. Barron was the president at that time. Then the court appointed Mr. Kovach to be the president. And so we brought our own claims in order to make sure that our case was heard as well. And the trial court found that they're the same. And there really is not – there's no factual dispute based on that. We have Mr. Kovach and we have the operating companies. There's no dispute on that and, therefore, no transcript is necessary. All we need are the parties' pleadings and show what their argument was. The counsel repeats those arguments at the hearing. And so there was no evidence taken. And I cited two cases that indicate that you don't need a transcript when that happens. You can just simply look at the law and see what the law provides for the factors. And under those factors, we believe the trial court was mistaken in dismissing the case. That's really all I have for you, Mr. Barron. And I thank you all for all your time. This has been a long day. Well, we'd like to thank the attorneys for their arguments in this case. The case will be taken under the counsel. We are adjourned.